UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLOW BEND VENTURES, LLC | CIVIL ACTION |
| VERSUS | NO. 18-3141 |
| CLOYD VAN HOOK, et al. | SECTION M (4) |

**ORDER & REASONS**

Before the Court is a motion by defendants Cloyd F. Van Hook and Guarisco, Cordes & Lala, LLC ("GCL") (collectively, "Defendants") seeking partial summary judgment on plaintiff's claims against them.[1] Plaintiff Willow Bend Ventures, LLC ("WBV") responds in opposition,[2] and Defendants reply in further support of their motion.[3] Also before the Court is WBV's motion *in limine* to exclude Defendants' tax law expert, Jaye Calhoun,[4] to which Defendants respond in opposition.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying both motions.

I. BACKGROUND

This case involves alleged legal malpractice.[6] WBV is a limited liability company that was formed to own and operate a borrow pit on the west bank of the Mississippi River in St. John the Baptist Parish, Louisiana.[7] WBV purchased the borrow pit in 2007.[8] WBV sold dirt, clay, or fill

---

[1] R. Doc. 39.
[2] R. Doc. 51.
[3] R. Doc. 54.
[4] R. Doc. 40.
[5] R. Doc. 47.
[6] R. Doc. 1-1. This case arose as an adversary proceeding in WBV's bankruptcy, but the reference to the bankruptcy court was withdrawn. R. Doc. 14.
[7] R. Doc. 1-1 at 4.
[8] *Id.*

from the borrow pit that has been processed by drying it to a prescribed moisture content.[9] In 2008 and 2009, respectively, the United States Army Corps of Engineers ("USACE") certified 64 acres, and then another 419 acres, of WBV's borrow pit as containing soil suitable for use in the construction of hurricane protection levees.[10] WBV alleges that it then began processing and selling fill material for use in USACE levee projects, and that "[n]early all of the fill material excavated from [its] pit was used for [USACE] projects."[11]

On May 23, 2014, WBV received an assessment from the St. John the Baptist Parish sales and use tax office (the "collector") stating that WBV owed local sales and use tax in the amount of $1,605,244.42, including penalties and interest, for the period of January 1, 2010, through June 30, 2013.[12] WVB hired attorney Van Hook of the GCL firm to represent it with regard to the assessment and any allegedly unpaid taxes.[13] Defendants, on WBV's behalf, filed a petition for redetermination of assessment against the collector asserting WBV's position "that most, if not all, of its sales of fill material during the assessed time period was for future use in [USACE] projects," and thus no local sales and use taxes were due thereon pursuant to La. R.S. 47:301(10)(g), which removes such sales from local sales and use taxation.[14]

On May 31-June 1, 2016, local tax judge Cade R. Cole of the Louisiana Board of Tax Appeals ("BTA") conducted a hearing of WBV's petition against the collector.[15] WBV was represented by Defendants.[16] WBV lost. In his April 11, 2017 judgment with written reasons, Judge Cole recognized that "[t]he term 'retail sale' does not include a sale of corporeal movable

---

[9] *Id.*
[10] *Id.* at 4-5.
[11] *Id.* at 5.
[12] *Id.*
[13] *Id.*
[14] *Id.* at 5-6.
[15] *Id.* at 6.
[16] *Id.*

property which is intended for future sale to the United States government or its agencies," and that sales to a subcontractor of a federal contractor qualify for the exclusion "when supported by the facts and evidence in [the] record."[17] However, Judge Cole held that WBV did not present any direct evidence of how each contractor or subcontractor used the fill material, and as a result, WBV failed to meet its burden of proof that each sale of fill material was intended for future sale to the USACE and that title to the fill was transferred to the USACE prior to its using the dirt.[18] Thus, Judge Cole held that the local sales and use tax would be imposed on "those sales to subcontractors where the subcontractor's direct relationship with a [USACE] contract was not proven by record evidence."[19] Pursuant to Judge Cole's findings, the BTA rendered judgment in favor of the collector and against WBV in the amount of $1,479,914.17.[20]

In this action, WBV alleges that Defendants committed legal malpractice by failing to present Judge Cole with direct evidence that the dirt was used in USACE levee projects.[21] WBV alleges that, prior to the hearing, it "was in possession of contracts, sales tickets, and other evidence which would have proven that the sales occurring from January 1, 2010 through June 20, 2013 were specifically for fill material to be used in [USACE] levee projects," and that Defendants failed to produce said evidence in discovery resulting in its being excluded from trial.[22] WBV alleges that Defendants violated Rules 1.1, 1.3, and 1.4 of the Louisiana Rules of Professional Conduct and were negligent by failing to adequately advise and represent WBV in the tax

---

[17] *Id.*
[18] *Id.* at 7.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at 6-7.

proceeding.[23] WBV seeks "damages, for all costs of these proceedings and for all just and equitable relief."[24]

## II. LAW & ANALYSIS

### A. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on WBV's claim for damages, including attorney's fees and costs, attributable to the filing of its bankruptcy proceeding.[25] First, Defendants argue that WBV, without expert testimony, cannot carry its burden of proof that they caused WBV to file for bankruptcy, and it failed to timely designate such an expert pursuant to Rule 26 of the Federal Rules of Civil Procedure and this Court's scheduling order.[26] Defendants argue that the facts pertaining to WBV's financial situation are too complex for lay testimony, and thus, WBV needs an expert to opine as to the cause of WBV's filing for bankruptcy in order to recover the damages it claims.[27] Defendants contend that WBV's bankruptcy attorney, Phillip K. Wallace, who is identified on WBV's witness list, cannot offer any testimony as to the cause of WBV's bankruptcy filing because WBV did not designate him as an expert and make the appropriate disclosures pursuant to Rule 26.[28] Defendants also argue that WBV should not be able to recover expenses and attorney's fees related to its bankruptcy proceeding because WBV failed to plead that Defendants' alleged negligence caused it to file for bankruptcy.[29]

---

[23] *Id.* at 8.
[24] *Id.* at 9.
[25] R. Doc. 39-2 at 7-12. Defendants also seek summary judgment on WBV's claim for $401,852.76 for which WBV would have been liable regardless of Defendants' alleged malpractice. *Id.* at 4-7. This amount represents a portion of the tax judgment ($121,009.75 in taxes collected but not remitted and $40,000.00 in stipulated use taxes), and the related interest, penalties, and attorney's fees ($226,043.01), plus the audit costs incurred before Defendants were retained ($14,800.00). WBV concedes that Defendants are not liable for these specified amounts. R. Doc. 51 at 5-6. Therefore, Defendants' motion for summary judgment is GRANTED IN PART as to the $401,852.76 for which the parties agree Defendants could not have been liable.
[26] R. Doc. 39-2 at 7-10.
[27] *Id.* at 7.
[28] *Id.* at 8-10.
[29] *Id.* at 10-12.

4

In opposition to Defendants' motion, WBV argues that expert testimony is not required by law for it to prove that Defendants' alleged malpractice caused it to file for bankruptcy, and that Wallace's lay testimony as a fact witness familiar with the situation will suffice.[30] WBV observes that Defendants failed to cite any case where expert testimony was required to prove such an element of damages[31] and argues, then, that the jury will determine the weight to give to Wallace's testimony, and whether WBV met its burden of proof on this element of damages.[32] Further, WBV contends that it did not need to plead that Defendants' alleged malpractice caused it to file for bankruptcy because it is not a separate claim, but rather an element of damages.[33] WBV acknowledges that it will have to prove causation of the damages at trial, but there is no danger of trial by ambush as to this element of damages because Defendants have been aware of it since at least April 2, 2019, when WBV served its initial disclosures on Defendants.[34]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the

---

[30] R. Doc. 51 at 6-7.
[31] *Id.*
[32] *Id.* at 7.
[33] *Id.* at 8-11.
[34] *Id.* at 10-11. The initial disclosures list WBV's damages as including "attorneys' fees and costs paid by [it] for the bankruptcy proceedings related to the [BTA] judgment." R. Doc. 51-6 at 3.

5

conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th

Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

Here, summary judgment in Defendants' favor as to WBV's damages claim for attorney's fees and costs related to its bankruptcy filing is not warranted. Defendants cite no case that stands for the proposition that summary judgment should be entered against a party when it fails to designate an expert to opine as to the cause of its bankruptcy filing and related damages. Instead, the cases upon which Defendants rely involve the need for expert testimony on causation in more technical and complex settings involving more complicated damages scenarios. Here, WBV intends to rely on the factual testimony of its bankruptcy attorney, Wallace, to prove this claim. Wallace, while likely an expert on bankruptcy law, was not designated by WBV as an expert and will not be allowed to be qualified or to testify as an expert.[35] Thus, under Rule 701 of the Federal Rules of Evidence, Wallace's testimony will be limited to his personal knowledge of the facts and to only those opinions that are: (a) rationally based on his perception as a fact witness, not as an expert; (b) helpful to clearly understand his testimony or determine a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. The

---

[35] Defendants complain that they did not designate an expert to rebut WBV's position that its bankruptcy filing was caused by the BTA judgment, and hence, Defendants' alleged malpractice, because WBV did not designate an expert to address the issue, and that they have been prejudiced in this regard. R. Doc. 39-2 at 9. This is a fair point. As a result, Defendants shall have thirty days from the date of this Order & Reasons to designate such an expert, and if they choose to do so, to provide to WBV the required expert disclosures. This is necessary because Defendants did not know until WBV filed its witness list on March 17, 2020, that it would develop through Wallace "[t]estimony related to [its] bankruptcy and its fees and costs incurred litigating same." R. Doc. 37 at 3.

7

jury will evaluate Wallace's testimony, along with the other evidence, to determine whether WBV proved that Defendants' alleged malpractice caused it to file for bankruptcy and incur the associated attorney's fees and costs.

Further, the record reflects that such fees and costs are claimed as an element of damages, not a separate cause of action. In the adversary complaint, which was filed in the bankruptcy court, WBV alleges that Defendants are liable for WBV's "damages, for all costs of these proceedings," which can be read to refer to the fees and costs related to the bankruptcy proceeding as a whole.[36] Moreover, WBV informed Defendants it its initial disclosures that it sought such damages. Thus, there is no surprise. As such, Defendants' motion for summary judgment on this element of damages is DENIED.

### B. WBV's Motion *in Limine*

Defendants hired Jaye Calhoun, an experienced tax attorney, to offer an expert opinion on Van Hook's representation of WBV in the tax appeal before Judge Cade and why WBV lost.[37] Calhoun reviewed the record of the tax proceedings and opined that Van Hook provided adequate and ethical representation within the constraints WBV placed upon him.[38] Calhoun noted that Van Hook, on multiple occasions, told WBV that it needed to "connect the dots" with third-party evidence, particularly documents, showing that the dirt was eventually transferred to and used by the USACE, but WBV did not provide the documents and would not allow Van Hook to speak directly to WBV's clients to procure such evidence.[39] Instead, WBV relied on testimony from Wayne Fletcher, its unofficial chief financial officer and corporate representative.[40] Calhoun

---

[36] *See* R. Doc. 1-1 at 9.
[37] *See* R. Doc. 40-2.
[38] *Id.* at 23-32.
[39] *Id.* at 17-21.
[40] *Id.* at 21-23.

opined that first-party testimony, such as Fletcher's, could have been enough to prove the ultimate destination of the dirt, but it likely was not in this case because Fletcher was not a competent or credible witness, as reflected in his testimony and exchanges with Judge Cade.[41] Calhoun cited several examples from Fletcher's testimony that she believes undermined his credibility before Judge Cade.[42] Ultimately, Calhoun opines that "Van Hook exercised reasonable care, skill and diligence in handling" WBV's tax proceeding, adequately advising WBV of the need for third-party documentation, but "allow[ing] the client to exercise its right to choose to testify, which might have been sufficient if the client had proved to be more credible on the stand."[43] Calhoun further noted that Van Hook had the difficult task of managing the client (Fletcher) that had "unrealistic expectations and an inflated sense of the value of its own testimony."[44] Thus, Calhoun opines that "Van Hook should not be held accountable for the bad judgment of the plaintiff under the circumstances."[45]

WBV seeks to exclude Calhoun's testimony, arguing that she offers impermissible opinions of Fletcher's credibility.[46] WBV contends that an expert witness cannot offer opinions on the credibility of another witness.[47] Further, WBV argues that Calhoun has no expertise in whether someone else is credible and has no methodology for making a credibility assessment.[48]

Defendants respond that WBV's arguments go to the weight and credibility to be assigned to Calhoun's testimony, not its admissibility.[49] Defendants further argue that, given her knowledge and experience in tax proceedings, Calhoun's expert opinion on the reasons for WBV's loss in the

---

[41] *Id.* at 21-26.
[42] *Id.* at 24-26.
[43] *Id.* at 31.
[44] *Id.*
[45] *Id.*
[46] R. Doc. 40-1 at 5-8.
[47] *Id.*
[48] *Id.* at 8.
[49] R. Doc. 47 at 7.

BTA is especially relevant because, to prevail on a claim for legal malpractice, WBV must prove that Defendants' negligence was the proximate cause of the loss.[50] Moreover, Defendants distinguish this case from those cited by WBV inveighing against expert opinions on witness credibility: in each of those cases, Defendants say, the expert's opinion was excluded when he or she critiqued the testimony of another witness given *in the same proceeding*, whereas Calhoun is not critiquing Fletcher's testimony in this proceeding, but rather offering an opinion as to the reasons Judge Cade may not have found his testimony credible in the BTA proceeding.[51] Thus, Defendants argue, the jury in this case can independently evaluate the testimony of both Calhoun and Fletcher given at the trial of this matter and make its own determinations as to their credibility in this proceeding.[52]

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[50] *Id.*
[51] *Id.* at 8-9.
[52] *Id.* at 9-10.

10

Fed. R. Evid. 702.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire v. Carmichael*, 526 U.S. 137, 150 (1999). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 508 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed at an issue that is "well within the common sense understanding of jurors or requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). A witness qualified as an expert is not strictly confined to his area or practice, but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 2018 WL 4932716, at *3 (5th Cir. Oct. 10, 2018) (quotations and citations omitted).

WBV does not take issue with Calhoun's qualifications to testify as a tax-law expert, and indeed she is an attorney highly credentialed with many years of experience in the field. Calhoun's opinions regarding Fletcher's testimony before the BTA are not impermissible opinions on the credibility of his testimony *in this case*, but rather offer a tax lawyer's insight as to what might have gone wrong for WBV before the BTA for reasons apart from Van Hook's alleged malpractice. All of Calhoun's opinions regarding Van Hook's representation of WBV before the BTA, including those regarding Fletcher's testimony, are well within the ambit of her expertise and are relevant and reliable as they are placed within the context of the record of that proceeding. To the extent WBV questions the content of and support for the opinions or the reasoning set out in Calhoun's report, WBV will have an opportunity to explore these issues at trial through cross-examination of Calhoun and the presentation of countervailing testimony. *See Morris v. Liberty Mut. Ins. Co.*, 2011 WL 317741, at *2 (E.D. La. Jan. 31, 2011) ("questions relating to the bases of an expert's opinion go to weight, not admissibility"). As such, WBV's motion to exclude Calhoun is DENIED.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion for summary judgment (R. Doc. 39) is GRANTED IN PART as to the $401,852.76 for which the parties agree Defendants could not have been liable, but the motion is otherwise DENIED.

IT IS FURTHER ORDERED that WBV's motion *in limine* to exclude Calhoun (R. Doc. 40) is DENIED.

New Orleans, Louisiana, this 4th day of May, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE